UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PACIFIC CHEESE CO., INC, *et al.*, | Case No. 3:15-cv-00351-MMD-VPC |
| Plaintiff, | ORDER |
| v. | |
| ADVANCED COIL TECHNOLOGY, LLC, *et al.*, | |
| Defendants. | |

**I.  SUMMARY**

The parties to this diversity action are attempting to establish who is responsible—and to what extent—for a fire in a cheese processing facility in Reno, Nevada, that began inside a large piece of heating and cooling equipment called an Air Handler ("AH"). Before the Court are Defendant Ray's Heating Products, Inc. d/b/a RHP Mechanical Systems' ("RHP") Motion for Summary Judgment ("RHP's MSJ") (ECF No. 191), and Defendant Hussmann Corporation's ("Hussmann") Motion for Partial Summary Judgement ("Hussmann's MPSJ"). (ECF No. 206.) With respect to RHP's MSJ, Plaintiff Travelers Property Casualty Company of America ("Travelers") filed a response (ECF No. 235.),[1] and RHP filed a reply (ECF No. 238.). With respect to Hussmann's MPSJ,

---

[1] The Court notes that ECF No. 235 is incorrectly formatted in violation of LR IA 10-1 because it is lacking line numbers and admonishes Travelers' counsel to read, understand, and comply with the Court's Local Rules going forward.

Travelers filed a response (ECF No. 253),[2] and Hussmann filed a reply (ECF No. 264). For the reasons set out below, both RHP's MSJ and Hussmann's MPSJ are denied. In addition, several miscellaneous motions filed by the parties are also before the court, which are addressed in Section VI, below. (ECF Nos. 254, 244, 255, 267.) These motions are also denied.

## II. BACKGROUND

The original plaintiffs in this case, Pacific Cheese Company, Inc. ("Pacific Cheese") and Lake Valley Properties, LLC ("Lake Valley"), which are under common ownership, own and operate a cheese-processing facility in Reno, Nevada. (*See* ECF No. 1.) More specifically, Pacific Cheese owns the cheese-processing facility ("the Facility"), and Lake Valley owns the building. (*See id.*) As further explained below, a fire that allegedly originated in the AH—again, a large piece of heating and cooling equipment—allegedly caused substantial damage to the Facility and the building. Plaintiff Travelers paid its insureds Pacific Cheese and Lake Valley for damage caused by this fire pursuant to an insurance policy. Accordingly, Travelers stepped into the shoes of Pacific Cheese and Lake Valley as their subrogee and now continues to prosecute this case as Plaintiff. (*See* ECF No. 107.) Travelers filed the Third Amended Complaint ("TAC"), the operative complaint for the purposes of these motions, in this Court on August 25, 2016. (*See id.*) Except where stated, the following facts appear without dispute in the summary judgment record.

---

[2]Travelers appears to have inadvertently filed a draft response (ECF No. 246), and then filed a corrected response (ECF No. 253) a day late. Travelers also appears to have dropped an argument in its corrected response. The Court has considered the corrected response (ECF No. 253) because the corrected response would supersede the earlier response. Moreover, the earlier draft appears to have been filed in error, and Hussmann does not appear to have been prejudiced by Travelers' error because Hussmann's reply brief (ECF No. 264) responds to the arguments raised in Travelers' corrected response, and not the argument that Travelers appears to have dropped between its draft and the final document. In addition, Travelers requested oral argument in its response to Hussmann's MSJ. Travelers' request for oral argument is denied because the Court finds oral argument unnecessary to resolve Hussmann's MPSJ. *See* LR 78-1.

2

1       The purpose of the Facility is processing cheese, meaning, for example, to shred mozzarella and package it in plastic bags to be sold as shredded mozzarella cheese. (*See, e.g.*, ECF No. 235-4 at 4.) Cheese must be kept cool during processing to prevent spoliation. (*See id.*) However, the equipment upon which the cheese is processed must be periodically steam-cleaned. Thus, the temperature inside the entire cheese-processing facility must be kept cool, but occasionally warmed up to dry out cheese-processing equipment after steam cleaning. (TAC at ¶ 28.) The AH is the piece of equipment that heats and cools the cheese processing facility for these purposes. (*See, e.g.*, ECF No. 235 at 4-5.) The AH is about the size of a shipping container, and contains both a large gas burner for warming air, and refrigeration coils for cooling air, along with a large fan that pulls air through the AH to be either heated or cooled. (*See, e.g.*, *id.*)

      The Facility was planned and constructed in 2004 and 2005. (*See* TAC ¶ 6.) The AH was installed sometime in 2005. (*See id.* ¶ 22; ECF No. 206 at 3.) Haussmann sold the AH to Pacific Cheese pursuant to a contract with Pacific Cheese where Haussmann agreed to provide and install refrigeration equipment in the Facility. (*See id.* at 3.) The AH was manufactured by Advanced Coil, Inc. operating under the business name Phoenix Air Systems ("Phoenix"). (*See id.*; ECF No. 253 at 1.)

      Something went wrong—perhaps a small fire within the AH—with the AH on October 7, 2013. (*See* ECF No. 191 at 2.) Pacific Cheese called RHP and asked them to send someone to troubleshoot the issue. (*See id.*) A technician from RHP, Paul Carbone, came and inspected the AH that same day. (*See id.*) During that six-hour service call, Mr. Carbone spoke to several Pacific Cheese employees about the AH, although the content of those conversations is generally disputed. (*See id.* at 2-3; ECF No. 235 at 7-9.) Travelers and RHP, however, do not dispute that Mr. Carbone told the Pacific Cheese employees he spoke to that they should contact the AH's manufacturer, Phoenix, to have the AH inspected and further repaired. (*See id.*) But Travelers and RHP specifically dispute whether Mr. Carbone told the Pacific Cheese employees he spoke with: (a) he had fixed the AH during his service call such that it could and would continue

running; and (b) that Pacific Cheese must urgently contact Phoenix to have them inspect and repair the AH to mitigate serious fire and safety concerns (as opposed to merely indicating that Pacific Cheese may want to contact Phoenix, though it was not entirely necessary). (*See id.*)

A larger fire started in the AH on July 9, 2014, which allegedly did substantial damage to the cheese processing facility and the building it is contained in. (*See* TAC at ¶¶ 38, 47.) What Mr. Carbone did and said forms the basis of Travelers' claims against RHP, and are also relevant to RHP's MSJ. Specifically, the TAC alleges two causes of action against RHP—negligence and breach of contract. (*See* TAC at ¶¶ 170-184.) Travelers basically alleges that Mr. Carbone, and therefore RHP, was negligent and at least partially responsible for the larger July 9, 2014 fire because he said he fixed the AH when he had not, and failed to adequately warn Pacific Cheese of the danger it faced if Pacific Cheese did not get Phoenix to inspect and properly repair the AH. (*See* ECF No. 235 at 3-4.)

Travelers also seeks to hold Hussmann at least partially liable for the July 9, 2014 fire because Hussmann sold Pacific Cheese the AH as part of a larger heating and cooling system, and installed the AH. Specifically, the TAC alleges the following causes of action against Hussmann: (1) products liability; (2) negligence; and (3) breach of warranty. (*See* TAC at ¶¶ 66-72, 99-106, 139-148). Travelers basically alleges that the AH as installed was dangerous and defective, and that issues with the AH or its installation—attributable to Hussmann—also caused the July 9, 2014 fire. (*See generally id.*)

In addition, Travelers also sought to hold other entities involved in the manufacture, installation, and maintenance of the AH liable for the July 9, 2014 fire. However, at this time, Travelers has reached settlement agreements with those other entities. (*See* ECF No. 295.) Further, Plaintiffs stipulated to the dismissal of Hussmann's former wholly-owned subsidiary, Krack Corporation, which has since merged with

Hussmann. (*See* ECF No. 73.) Therefore, at this time, only RHP and Hussmann remain as defendants in this case.

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV. RHP'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 191)

RHP moved for summary judgment as to both causes of action that Travelers asserted against RHP. The Court addresses each in turn below.

### A. Governing Law

As an initial matter, the Court determines that Nevada law governs Travelers' two claims against RHP. "In diversity actions, as here, federal courts apply substantive state law." *Walker v. State Farm Mut. Auto. Ins. Co.*, 259 F. Supp. 3d 1139, 1144 (D. Nev. 2017) (first citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); and then citing *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007)); *see also Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010) ("Federal courts must apply state substantive law to state law claims, including the forum state's choice of law rules.").

In Nevada, the Second Restatement's most significant relationship standard generally governs choice-of-law issues in tort actions. *See Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. Cty. of Clark*, 134 P.3d 111, 116 (Nev. 2006). Pursuant to the Second Restatement, the place where the injury occurred determines the law to be applied, unless some other state has a more significant relationship to the "occurrence and the parties." *Id.* (citing Restatement (Second) of Conflict of Laws § 145). Here, all alleged acts or omissions bearing on Travelers' claims against RHP occurred in

Reno, Nevada. No other state has a more significant relationship to the interactions between Travelers and RHP with respect to the July 9, 2014 fire. And the parties do not contend otherwise. Therefore, the Court applies Nevada law to Travelers' negligence claim.

The Court also assumes that Nevada law governs Travelers' breach of contract claim against RHP because the parties do not contend otherwise.[3]

**B.     Negligence**

Travelers seeks to impose liability on RHP for a negligent inspection of the AH by one of RHP's technicians, Mr. Carbone. RHP argues that it cannot be held liable under a negligence theory because it owed no duty to Pacific Cheese and Travelers cannot show the requisite causal link between Mr. Carbone's service visit and the July 9, 2014 fire. However, the factual aspect of RHP's argument is that RHP told Pacific Cheese to contact Phoenix to get the AH inspected, which relieved RHP of any duty it owed to Pacific Cheese. (*See* ECF No. 191 at 8.) Further, RHP argues that Pacific Cheese's failure to compel Phoenix to come out and inspect the AH after Mr. Carbone's visit caused the July 9, 2014 fire, not any act or omission of Mr. Carbone. (*See id.* at 8-9.) The Court is not persuaded by RHP's arguments.

Under Nevada law, "to prevail on a traditional negligence theory, a plaintiff must demonstrate that '(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's injuries, and (4) the plaintiff suffered damages.' Courts often are reluctant to grant summary judgment in negligence actions because whether a defendant was negligent is generally a question of fact for the jury to resolve." *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) (citations omitted). Here, the Court finds that genuine issues of material fact exist as to whether RHP's inspection of the AH was negligent, precluding granting

---

[3]Travelers and RHP have not provided the Court with a copy of the applicable contract, but have also offered no argument or evidence that it was governed by the law of any state other than Nevada. Further, all relevant acts or omissions under the contract appear to have occurred in Reno, Nevada.

summary judgment in RHP's favor. Thus, RHP's MSJ is denied with respect to Travelers' negligence cause of action.

First, with respect to duty of care, the court disagrees with RHP's argument that RHP owed Pacific Cheese no duty to repair the AH. RHP argues it owed Pacific Cheese no duty because Mr. Carbone told Pacific Cheese employees to contact Phoenix, the AH's manufacturer, and because later emails of Pacific Cheese employees purportedly establish that Pacific Cheese did not rely on RHP. (*See* ECF No. 191 at 8.) RHP cites no applicable law to support this argument, and the Court has not located any. In contrast, the Restatement (Second) of Torts provides that professionals such as RHP owe customers like Pacific Cheese a duty to "exercise the skill and knowledge normally possessed by members of that profession or trade . . . ." Restatement (Second) of Torts § 299A. Travelers contends that Mr. Carbone improperly diagnosed the issues with the AH and failed to sufficiently warn Pacific Cheese regarding the dangers of its continued operation. (*See* ECF No. 253 at 2-3.) The facts and evidence presented by the parties here merely establish that the parties dispute whether Mr. Carbone exercised the skill and knowledge normally possessed by HVAC repair technicians, and the Court cannot say as a matter of law that RHP owed Pacific Cheese no duty under the circumstances here.

Second, with respect to the breach element of Travelers' negligence claim, issues of disputed material fact and credibility determinations preclude the Court from ruling as a matter of law that RHP did not breach the duty it owed to Pacific Cheese. The parties dispute both the merits of Mr. Carbone's inspection and what he did or did not tell the Pacific Cheese employees he spoke with towards the end of his service visit at Pacific Cheese. (*See* ECF No. 191 at 2-3; ECF No. 235 at 7-9.) Indeed, the Court agrees with Travelers that material factual disputes exist regarding: what Mr. Carbone communicated to Pacific Cheese employees; whether RHP acted as a reasonable HVAC repair company would have with respect to Mr. Carbone's service visit on the AH; and whether Pacific Cheese took reasonable steps to have Phoenix service the AH following Mr.

Carbone's visit, including whether Pacific Cheese understood the gravity of the issues affecting the AH following Mr. Carbone's visit. (*See* ECF No. 235 at 13-14.) These important questions are questions of fact, and some turn on a determination of Mr. Carbone's credibility. As such, these questions relevant to breach are not properly resolved on summary judgment.

Finally, with respect to the causation element of Travelers' negligence claim, the Court cannot find as a matter of law that any errors in Mr. Carbone's inspection of the AH did not contribute to the larger, July 9, 2014 fire. Travelers contends that the larger fire would not have happened if Mr. Carbone had properly diagnosed the issues with the AH and sufficiently warned Pacific Cheese of the danger associated with continuing to operate the AH. (*See, e.g.*, ECF No. 235 at 12-13.) RHP basically disputes that any action or inaction taken by Mr. Carbone contributed to the larger fire, but, again, RHP's argument depends on the Court deciding disputed issues of material fact in RHP's favor, which the Court cannot generally do at the summary judgment stage. *See, e.g. Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992) (stating that questions of "proximate cause are generally questions of fact.").

In sum, the Court denies RHP's MSJ with respect to Travelers' negligence claim.

## C. Breach of Contract

Travelers also seeks to impose liability on RHP for the inspection of the AH by Mr. Carbone under a breach of contract theory. Travelers alleges that Mr. Carbone did not perform his inspection of the AH with reasonable care in a workmanlike manner—in breach of the contract between RHP and Pacific Cheese where RHP agreed to "inspect and examine the [AH] to identify and repair the condition(s) that resulted in the filters inside the [AH] catching fire." (TAC at ¶ 179.) RHP does not dispute that it entered into a contract with Pacific Cheese, but instead argues it did not breach that contract because Mr. Carbone instructed Pacific Cheese to contact Phoenix to have the AH repaired. (*See* ECF No. 191 at 9:26-10:9.) RHP further argues that it cannot be held liable for breach of contract because Travelers cannot prove that any act or omission on RHP's part caused

the July 9, 2014 fire. (*See id.* at 10:10-16.) RHP's argument with respect to Travelers' breach of contract claim fails for the same reason that RHP's argument fails with respect to Travelers' negligence claim: it turns on questions of disputed material fact that are not appropriately resolved at the summary judgment stage.

In Nevada, "[t]o succeed on a breach of contract claim, a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011) (citing *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.")).

Here, Travelers and RHP do not dispute whether a valid contract was formed between Travelers and RHP or whether Pacific Cheese performed its obligations under that contract. As mentioned above, RHP instead contests the breach and damages elements of Travelers' breach of contract claim. However, the Court finds that disputed questions of material fact preclude granting summary judgment in RHP's favor. As to breach, whether RHP breached its contract with Travelers depends on what Mr. Carbone told the Pacific Cheese employees at the conclusion of his service call. RHP and Travelers specifically dispute what Mr. Carbone said and to whom he spoke. (*See* ECF No. 191 at 2-3; ECF No. 235 at 7-9.) And with respect to RHP's argument on the damages prong—which is that Mr. Carbone's inspection cannot have caused the July 9, 2014 fire—that too depends on what Mr. Carbone said and to whom he spoke.

Thus, the facts and evidence presented here do not warrant a grant of summary judgment in RHP's favor with respect to Travelers' breach of contract claim, and RHP's MSJ is therefore denied.

**V.     HUSSMANN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 206)**

Hussmann moved for partial summary judgment seeking an order from the court that the maximum damages Travelers can recover against Hussmann is $139,402—the

line item cost of the AH—because of a damages limitation clause in the contract between Hussmann and Pacific Cheese. (*See* ECF No. 206.) Because the Court does not agree with Hussmann that the damages limitation clause it identified clearly limits the amount of damages Travelers may recover against Hussmann here, the Court denies Hussmann's MPSJ.

### A. Preliminary Matters

Hussmann and Travelers do not dispute that the contract between Hussmann and Pacific Cheese is governed by Missouri law. (*See id.* at 6:25-26; ECF No. 253 at 3:1-4.) Travelers does dispute whether the limitation Hussmann relies upon is part of the contract. (*See* ECF No. 253 at 18-20.) However, Hussmann offers the affidavit of Olin Cunningham, who states in the affidavit that he is personally familiar with the transaction between Hussmann and Pacific Cheese, and confirms that the contract that Hussmann relies on and attached to Hussmann's MPSJ is the complete contract between Hussmann and Pacific Cheese. (*See* ECF No. 207-2.) Travelers offers no competing affidavit or other evidence in response. (*See* ECF No. 253 at 18-20.) Thus, the Court finds for the purposes of ruling on Hussmann's MPSJ that the limitation of liability provision is part of the contract between Hussmann and Pacific Cheese because in opposing Hussmann's MSJ, Travelers "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan*, 929 F.2d at 1409. Again, here, Travelers did not.

### B. Contract Interpretation

Under Missouri law, contract interpretation is a question of law. *See, e.g.*, *Finova Capital Corp. v. Ream*, 230 S.W.3d 35, 42 (Mo. Ct. App. 2007) (citation omitted). In interpreting a contract, the court should "attempt to ascertain the parties' intention, looking only to the contract language unless the contract is ambiguous." *Id.* "Ambiguity depends on context. Contract language is not interpreted in a vacuum, but by reference to the contract as a whole." *Purcell Tire & Rubber Co. v. Exec. Beechcraft, Inc.*, 59

S.W.3d 505, 510 (Mo. 2001). A contract is not ambiguous merely because the parties disagree as to its construction. *See Finova Capital Corp.*, 230 S.W.3d at 48.

The relevant sentence of the limitation of liability provision that Hussmann seeks to rely on here reads: "Buyer's remedies set forth herein are exclusive, and the total liability of Hussmann with respect to any purchase of Hussmann products, whether based on contract, warranty, negligence, indemnity, strict liability or otherwise, shall not exceed the purchase price of the unit of product upon which such liability is based." (ECF No. 207-1 at 25.) Hussmann argues that this provision limits the damages that Travelers can potentially recover against Hussmann to the itemized cost of the AH, $139,402. (*See* ECF No. 206.) Travelers argues that this provision cannot limit the damages it may recover against Hussmann to the cost of the AH because the AH is not a 'Hussmann product;' the AH is a Phoenix product. (*See* ECF No. 253 at 16:12-25). The Court agrees with Travelers.

The Court finds that the limitation of liability provision Hussmann seeks to rely on here is unambiguous, and does not limit Hussmann's potential damages exposure to the itemized cost of the AH. First, the plain meaning of 'Hussmann products' is 'products manufactured by and/or branded as Hussmann products,' not 'products of third parties sold by Hussmann,' as Hussmann would like the Court to find. Second, the AH is clearly identified as a Phoenix product throughout the contract. (*See* ECF No. 107-1 at 6, 17, 21-24.) Some products in the contract are identified as Hussmann products. (*See id.* at 6.) Third, interpreting 'Hussmann products' as Hussmann would like the Court to renders other language contained on the same page of the same contract superfluous, and thus cannot be correct. For example, paragraph 1 of the "Terms and Conditions" of the contract uses the phrasing, "the sale of products by Hussmann Corporation." (*See id.* at 25.) Therefore, the drafter of the contract cannot have intended 'Hussmann products' to mean 'the sale of products by Hussmann,' because both phrasings appear on the same page of the contract. If the drafter of the contract meant 'the sale of products by Hussmann,' which could arguably encompass third parties' products, he or she would

have written 'the sale of products by Hussmann' instead of 'Hussmann products.' He or she did so on the very same page of the contract. Therefore, 'Hussmann products' is intended as a limitation, meaning the limitation of liability provision at issue here would only apply if a product manufactured by, or branded as, Hussmann were to cause any alleged injury to a party asserting a cause of action against Hussmann.

In sum, the facts and evidence presented here do not support granting partial summary judgment in Hussmann's favor. Therefore, Hussmann's MPSJ is denied.

## VI. OTHER MOTIONS

RHP and Travelers filed several unhelpful documents after briefing on RHP's MSJ was complete in an apparent attempt to re-argue RHP's MSJ. (*See* ECF Nos. 240, 241, 243, 255, 259.) These motions and other documents were filed without first obtaining leave of the Court in violation of LR 7.2(g), are generally improper, and are duplicative of RHP and Travelers' briefing on RHP's MSJ. Therefore, the Court has not considered them. Accordingly, RHP's Motion to Strike (ECF No. 255) is denied as moot.

Similarly, Travelers filed a motion for leave to file a surreply in connection with RHP's MSJ. (ECF No. 254 (incorrectly filed initially as ECF No. 244).)[4] As explained above, the Court has denied RHP's MSJ. Therefore, there is no need for a surreply and Travelers' motion (ECF Nos. 244, 254) is denied as moot. *See also* LR 7-2(b).

In addition, Travelers filed a motion for leave to file a surreply in connection with Hussmann's MPSJ. Because the Court has denied Hussmann's MPSJ, Travelers' motion for leave to file a surreply (ECF No. 267) is also denied as moot. *See also* LR 7-2(b).

## VII. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

---

[4]The Court again admonishes Travelers' counsel to exercise greater care going forward with respect to the documents it files with this Court.

determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Defendant RHP's Motion for Summary Judgment (ECF No. 191) is denied.

It is further ordered that Defendant Hussmann's Motion for Summary Judgment (ECF No. 206) is denied.

It is further ordered that Defendant RHP's Motion to Strike (ECF No. 255) is denied.

It is further ordered that Plaintiff Travelers' Motions for Leave to File Sur-Replies (ECF Nos. 244, 254, 267) are denied.

DATED THIS 30th day of August 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE